# Springer *v.* J. H. Somers Fuel Company.

*Mines and mining— Trespass—Damages—Nominal damages.*

In an action of trespass by an owner of coal land from under which the coal has been removed against an owner of contiguous coal land, who has removed his coal through the entries under the plaintiff's lands, nominal damages only can be recovered, where there is no evidence of actual injury.

Argued May 8, 1900.    Appeal, No. 100, Jan. T., 1900, by plaintiff, from judgment of C. P. Fayette Co., Dec. T., 1898, No. 53, on verdict for plaintiff in case of Everil F. Springer v. J. H. Somers Fuel Company.    Before GREEN, C. J., McCOLLUM, FELL, BROWN and MESTREZAT, JJ.    Affirmed.

Trespass for wrongful entry.    Before REPPERT, P. J.

The facts appear by the charge of the court which was as follows:

This is an action for damages brought by Everil F. Springer against Joseph H. Somers and Charles W. Somers, doing business as the J. H. Somers Fuel Company, to recover for injuries which the plaintiff alleges he has suffered in his real estate at the hands of the defendants.

In 1875, L. M. Speer and wife conveyed to Everil F. Springer a tract of land situate near the borough of Belle Vernon, in this county, containing some thirty-seven acres, and it is this land which the plaintiff alleges was injured by the mining operations of the defendants.    As I recall the testimony, the defendants went into the possession of the coal under this tract of land along about 1892, and prior to the time the defendants went into possession of the coal under the land in 1892, their predecessors in the title were N. J. Johnson, S. S. Robinson and D. A. Robinson, doing business under the style of the Cleveland Coal Company.

The deed from Speer and wife conveyed this land to Springer, excepting and reserving thereout and therefrom, the six feet of river vein of coal, so there were two estates in this land, the one owned by Springer which included everything except the

six feet or river vein of coal, and the estate in the coal, which, prior to 1892, it seems was owned by the Robinsons and thereafter was owned by the J. H. Somers Fuel Company up until about November 1, 1899.

The estate in the coal was not accompanied by what are known as mining rights; there were no mining privileges accompanying the grant of the coal; they simply had the title to the six feet or river vein of coal without any mining privileges whatever. Prior to the vesting of the title to the coal in the J. H. Somers Fuel Company, what is known in mining language as the main entry or tunnel was driven under the Springer land and extended under that land, as I recall the testimony, for about 850 feet. This main entry was about six feet wide and eight feet high; the tunnel or main entry was driven by Johnson and Robinson and had been constructed and was in operation at the time the J. H. Somers Fuel Company succeeded them in the ownership of the coal. So you will bear in mind that the present defendants are not liable for any damages which accrued by reason of the construction of this main entry, because they did not construct it. If any damage was done to that property by reason of the driving of this main entry, then those who drove it are liable and not those who succeeded them in this title. So we tell you that if by the driving and construction of this tunnel any damage were done to that property, that damage cannot be recovered as against these defendants, because they did not construct the tunnel or main entry. It seems that through this tunnel or main entry there has been taken out since the time of its construction, coal from adjacent and other tracts of land in the neighborhood, and it is for the use and occupation of this main entry in the transportation of this coal from adjoining and other tracts of land that this action is brought; the plaintiff claiming that thereby his estate in the land has been damaged; that the use and occupation of this main entry is a trespass and a wrong as against him.

Now, it appears that prior to the time that the J. H. Somers Fuel Company obtained title to this coal, it had been mined to a considerable extent; as I recall the testimony, there have been no mining operations conducted in the Springer coal by the J. H. Somers Fuel Company; that all the coal that has been taken out from under the Springer land was taken out prior

to their obtaining the title ; the last coal, as I recall the testimony, was some five or six acres which were taken out by Johnson and Robinson, but since that, no mining operations have been conducted under the Springer land ; and all of the coal under the Springer land except the ribs and pillars, in some places possibly amounting, as says a witness, to some twenty-five or thirty per cent of the total body of the coal, has been taken out.

The tracks which were used for mining the coal under the Springer land, with the exception of the track in this main entry, have been taken up ; and the testimony is, that under the present conditions, it would not be profitable to mine any further quantity of the Springer coal, and that none has been mined, at least, since 1892. And the question then arises in this case whether or not under those conditions, the present owners have any right to make use of the space there in the Springer coal as a road way, to transport coal from adjacent tracts of land ; that is the question in the case. Now the law as I understand it generally, in a case of this kind, is this : that while the purchaser and owner of the coal is in good faith mining out his coal, his right to the use of the space made vacant by his workings as they progress, cannot be obstructed or interfered with by the owner of the surface ; the purchase and ownership of the coal, however, does not give him a perpetual right of way under another's land ; after his workings in the coal have practically ceased, he cannot use those workings for the purpose of reaching and transporting adjoining or other coal. Now, if the workings in this mine have ceased and had practically ceased at the time this main entry was constructed, and if this main entry is not being used for the purpose of transporting the coal under this tract, and mining operations are not being carried on in good faith under the Springer tract, and if this main entry is not used and has not been used and was not constructed for the purpose of being used in connection at least, with the workings under the Springer land, then these defendants would not have the right to maintain this entry or tract, or use it for the purpose of transporting coal from adjoining or other tracts of land. They would be trespassers and they would have no right there under these circumstances and under the law, as I understand it.

Now, if that is the case, and if you should so find, then your verdict should be for the plaintiff, and it would be necessary for you to ascertain the amount of damages which the plaintiff has sustained by reason of the wrongful trespass, if you should find that those people are making use of that entry wrongfully.

There has been a great deal said in regard to damages, and perhaps it would be as well to read you the definition of compensatory, exemplary and nominal damages. Compensatory damages are such damages as measure the actual loss and are allowed as amends therefor. Exemplary, punitive or vindictive damages are such damages as are in excess of the actual loss and are allowed in theory when a tort is aggravated by evil motive, actual malice, deliberate violence, or oppression or fraud. Such damages are sometimes called "smart money." We will say right here, there is nothing in this case, gentlemen, that would warrant or justify vindictive or punitive damages. Of nominal damages, the definition is, a trivial sum awarded where a mere breach of duty or infraction of right is shown with no serious loss sustained.

The plaintiff alleges that for some seven years these defendants have been making use of this way through his land for the purpose of transporting coal from adjoining and other tracts of land, and there has been some testimony as to the amount of coal that has gone through. I do not think it is material whether 100 bushels of coal or 100,000 or 1,000,000 have been taken through this main entry; it is not a question of how much coal has been taken through this main entry or heading; it is not a question of how much the privilege of taking this coal through the main entry would be worth to these defendants. This is not a case of recovering tolls or of recovery for the value of the privilege; that it is not what this plaintiff is here for, and what he would be entitled to recover would not be measured by the advantages which the defendants have made or had out of this right of way, or out of this main entry; that has nothing to do with the case, and does not affect the case in the slightest degree. What this plaintiff is here suing for is for an injury done to him by the transportation of coal through this entry, and what the defendants have made or lost is entirely immaterial in the consideration of that matter.

There has also been considerable discussion as to the vindi-

cation of the law and the vindication of a man's rights in this case. Now, as I understand the law, it is as follows: An injury, legally speaking, consists of a wrong done to a person, or in other words, the violation of his right. For the violation of every right there is a remedy; where, therefore, there has been a violation of a right, the person injured is entitled to an action; that is, he can sue; if he is entitled to an action, he is at least entitled to nominal damages. Such damages are given in order to vindicate a right which has been invaded. There is where the vindication of the law comes in and there is where a redress for the invasion of a man's right comes in; it is the right to bring an action and to maintain it, and that is all the vindication the law requires; that is the vindication the invasion of his right requires if there is nothing else in the case. In such cases, damages are given, that is, nominal damages, to vindicate a right which has been invaded. If nothing but a right has been invaded, then nominal damages is all that he should be allowed, and such further damages are awarded as are proper to remunerate him for any specific damages which he has sustained; and it is upon this principle that a person may sustain an action of trespass for the unauthorized entry on his land, although he shows no actual specific damage to have accrued to him; for instance, I go across your land, possibly I do you no actual damage in the way of injury to your crops or by an injury to your soil, and yet you have a right to a verdict against me, because I am a trespasser and I have trespassed on you, but while you have a right to a verdict, the measure of damages would be the amount of injury you will sustain resulting from the wrong complained of.

Now, in this case, the wrong complained of is the transportation, during the period of ownership of this coal by the defendants, of other coal through this main entry; there was some testimony in regard to damages sustained, by various witnesses, and I am very frank to say to you, gentlemen of the jury, that in the opinion of the court, the plaintiff neither by himself nor by any of his witnesses, has shown that any substantial damages accrued to him, or were done to his property by reason of this trespass, or by the running of this coal through that main entry. I fail to see in the testimony where the running of the coal through this entry from adjoining or other tracts of land,

has caused any substantial or actual damage to the estate of
this plaintiff; as I recall the testimony, plaintiff was not able
to state in what particular any injury had been done to him,
and the basis of the estimates made by the other witnesses in
his behalf, it seems to the court, were not such as would entitle
them to your consideration. For instance, take the testimony
of Mr. Linn; he makes the estimate upon the value which this
privilege was to the defendants; that it was worth that much
to the defendants to be allowed to run their coal through this
main entry. That is not the question in this case, and so with
the other witnesses, and we do not think that the testimony in
this case shows that any substantial injury has been done to
this plaintiff by the trespass of which he complains, but it is a
question for you, gentlemen of the jury, to ascertain whether
or not a trespass has been actually committed upon him, or upon
his land; if so, then you should allow him, at least, nominal
damages; but in the opinion of the court, if you should come to
the decision that a trespass has been committed against him,
you should allow him nominal damages only.

The jury found a verdict in favor of the plaintiff for nominal
damages.

*Error assigned* was in instructing the jury to find nominal
damages only.

*Edward Campbell*, for appellant.— An invasion of right being
shown, the law holds injury to be a probable result, and there-
fore gives judgment against the wrongdoer. In other words,
it presumes some damage to have resulted from the wrong:
1 Sedgwick on Measure of Damages (7th ed.), p. 75.

The appellant considers that the authorities make it clear
that he is entitled not only to compensatory damages adequate
to the profit the defendant has made out of his trespass upon
the appellant's lands, but to exemplary damages: 2 Sedgwick
on Measure of Damages (7th ed.), pp. 323, 324; Wheatley v.
Chrisman, 24 Pa. 298; Pittsburg, etc., Ry. Co. v. Lyon, 123 Pa.
140; Reynolds v. Braithwaite, 131 Pa. 419; Williams v. Es-
ling, 4 Pa. 486.

*A. D. Boyd*, for appellee, was not heard, but in his printed

brief said : For the purposes of this case, it may be conceded that where there is an invasion of a right the law implies damage, but where the law implies the injury it also implies the lowest or nominal damage : Pastorius v. Fisher, 1 Rawle, 27 ; Ripka v. Sergeant, 7 Watts & Serg. 9.

PER CURIAM, May 23, 1900 :

The learned court below instructed the jury that the plaintiff was entitled to nominal damages for the invasion of his right, and also to such further damages as would compensate him for any injuries which resulted from the wrong complained of. The right to recover vindictive damages was denied and this we think was the correct ruling on that subject. All the actual damage that the plaintiff sustained he could recover, but the case was not one for the allowance of vindictive damages. This rule was correctly stated and covers the whole of the contention.

Judgment affirmed.